**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-272 (TJK)** |
| **v.** | : | |
| | : | |
| **STEVEN HANNA and** | : | |
| **ROBERT HANNA,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendants Steven Hanna and Robert Hanna have each pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Steven Hanna and Robert Hanna to 14 days of incarceration each on Count Three and 24 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreements in this case, $500 in restitution as to each defendant.

**I.     Introduction**

The defendants, brothers Steven and Robert Hanna, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power

1

after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Both defendants pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds) and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in any of the Capitol Buildings). The United States' recommendation is supported by the defendants' efforts to get into the Capitol Building—including moving past police lines on the Upper West Terrace and observing broken windows and police near the Senate Wing Door— before entering through the Parliamentarian Door only 8 minutes after it was breached.

The Court must consider that both defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Robert Hanna's and Steven Hanna's crimes support a sentence of 14 days' incarceration, 24 months' probation, and $500 in restitution.

## II.   Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

The government refers the Court to the Statement of Facts filed in this case, ECF 1, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters,

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

*Defendants' Roles in the January 6, 2021 Attack on the Capitol*

Both Steven and Robert Hanna reside in Ohio.  On January 6, 2021, the defendants were on the northern side of the Upper West Terrace of the Capitol building, in front of a line of police officers and later went right up to the line of police officers as the rest of the mob moved in toward the officers and the Capitol building.



*Image 1: Robert Hanna (wearing a red hat, identified with a green arrow) and Steven Hanna (wearing a grey toboggan hat, identified with a red arrow) seated on the Upper West Terrance along with the mob of other rioters, in front of a line of law enforcement officers.*



*Image 2: Robert Hanna and Steven Hanna approaching a line of law enforcement officers.*

The defendants eventually made their way to the Capitol building, outside the broken windows near the Senate Wing Door.  While there, they watched another rioter climb into the broken window and engage with police officers through the window.



*Image 3: Robert Hanna and Steven Hanna standing outside a broken window near the Senate Wing Door while another rioter climbed through the window.*

Then, Robert Hanna climbed up onto the window ledge, while Steven Hanna stood below him.



*Image 4: Robert Hanna on the ledge outside a broken window near the Senate Wing Door, with Steven Hanna below him.*

5

At 2:48 p.m., the defendants entered the Capitol building through the Parliamentarian door—approximately 8 minutes after that door was breached.



*Image 5: Robert Hanna and Steven Hanna entering the Capitol building through the Parliamentarian door.*

They moved north into the Capitol building, down the hallway, and at approximately 2:57:58 p.m., they were stopped by several police officers in the hallway near the North Door, as depicted below. They remained there for approximately four minutes.



*Image 6: The defendants, along with other rioters, stopped by police officers.*



*Image 6 (zoom)*



*Image 7: The defendants, along with other rioters, stopped by police officers.*



*Image 7 (zoom)*

At approximately 3:02 p.m., the defendants moved toward the North Door to exit the Capitol building. They were inside the Capitol building for approximately fourteen minutes.



*Image 8: Defendants move toward the North Door.*



*Image 9: Defendants exiting the Capitol Building.*

*The Charges and Plea Agreements*

On July 14, 2023, the United States charged both defendants by a four-count Complaint with violating 18 U.S.C. §§ 1752 (a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On August 11, 2023, the United States filed a four-count Information with the same charges.  On January 23, 2024, both defendants pleaded guilty, pursuant to plea agreements, to Counts Three and Four of the Information (40 U.S.C. §§ 5104(e)(2)(D) and (G)).

### III.    Statutory Penalties

Robert Hanna and Steven Hanna now face sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendants each face up to six months of imprisonment and a fine of up to $5,000 on each of the two counts. The defendants must also pay restitution under the terms of their plea agreements in the amount of $500 each. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence for each defendant of 14 days of incarceration, 24 months' probation, 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

*v. Judd*, 21-cr-40, 2021 WL 6134590, at \*5 (D.D.C. Dec. 28, 2021).  While assessing defendants'
participation in that attack to fashion a just sentence, this Court should consider various
aggravating and mitigating factors.  Notably, for misdemeanor defendants like Steven and Robert
Hanna, the absence of violent or destructive acts is not a mitigating factor.  Had the defendants
engaged in such conduct, they would have faced additional criminal charges.

Here, the defendants were on the northern side of the Upper West Terrace of the Capitol
building, around the time of the breaches of the Senate Wing Door, which occurred at
approximately 2:13 p.m. They were in front of a line of police officers and later went right up to
the line of police officers as the rest of the mob moved in toward the officers and the Capitol
building.  They then made efforts to get into the Capitol building near the broken windows near
the Senate Wing Door—Robert Hanna even climbed up onto the ledge while another rioter
attempted to climb through the broken window and engaged with police inside.  When that failed,
the defendants entered the Capitol building through the Parliamentarian door—only approximately
8 minutes after it was breached, and during the height of the riot.  They then moved north through
the Capitol, and eventually encountered a line of police officers near the North Door.  After
remaining in the hallway near police officers for several minutes, they exited the Capitol through
the North Door.  They were in the building for approximately 15 minutes.

Accordingly, the nature and the circumstances of this offense establish the need for the
recommended sentence of 14 days of incarceration and 24 months of probation in this matter.

### B.  The Defendants' History and Characteristics

Both defendants self-surrendered to the FBI when they were informed by phone of the
charges in this case.  And they both accepted responsibility by pleading guilty.

11

Steven Hanna

Steven Hanna has several convictions for disorderly conduct, driving under the influence, and related offenses—many of which are over 10 years old.  PSR ¶¶ 20-28.  But notably, less than 10 years ago, in September 2014, he was convicted of a domestic violence offense.  PSR ¶ 27.  Then, just months before he committed the instant offenses on January 6, 2021, he was arrested for operating a vehicle while intoxicated.  He pleaded guilty and was sentenced to 180 days imprisonment, 175 days suspended, and 1 year of probation.  PSR ¶ 28.  According to the police report information detailed in the PSR, the defendant was passed out in the driver's seat of a parked car that stunk of alcohol and contained opened and unopened beer cans.  When aroused by police, his speech was slurred.  When the officers asked him to exit the car, he refused to comply, attempted to grab the gear shift lever, and fought with officers.  PSR ¶ 28.

Steven Hanna lives with his father in Beavercreek, Ohio, along with Steven Hanna's two sons from a prior relationship—ages 10 and 9.  The defendant is engaged to the mother of his daughter, who was born in January 2024.  PSR ¶¶ 44, 51, 52.  He has his GED and since approximately 2016, he has been employed as a construction laborer with a maintenance contractor.  PSR ¶¶ 65, 69.

Robert Hanna

Robert Hanna has several disorderly conduct and alcohol-related offenses dating from his teenage years through the age of 24.  Approximately 20 years ago, he was convicted of felonious assault.  PSR ¶ 29.  His last conviction prior to the instant offense (which was for driving under the influence) was nearly 15 years ago.  PSR ¶ 40.  Robert Hanna reports that he has been sober since that time—specifically since August 2, 2009.

Robert Hanna lives in Jamestown, Ohio, along with his two children, 13 and 11.  PSR ¶ 58.  He has a third child, age 21.  PSR ¶ 59.  He has his high school diploma and is currently employed at an insulation and waterproofing company.  PSR ¶ 75, 79.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to these particular defendants also weighs in favor of the recommended sentences.   The defendants must be deterred from future criminal activity, including any activity similar to that of January 6, 2021.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Steven and Robert Hanna based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

The defendants have pleaded guilty to Counts Three and Four of the Information, both of which are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present in the defendants' cases here, the Court might consider, for reference, the sentence imposed in the following cases.

In *United States v. Mark Nealy*, 23-CR-278-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings).  Like the defendants here, Nealy entered the Capitol building shortly after the breaches on the Upper West Terrace (the Senate Wing Door and the Parliamentarian Door).  Also like the defendants here, Nealy walked around the interior of the Capitol building and was in the Capitol building for approximately 13 minutes—exiting at the direction of police officers.  Judge Chutkan sentenced Nealy to 14 days incarceration.

In *United States v. Lattanzi*, 22-CR-28-TSC, the defendant entered the Capitol at 3:22 p.m., remained in the Capitol for 5 minutes, and exited after being directed to do so by police. The defendant lied to the FBI when they first approached him, but then admitted his conduct through an attorney the next day. While the defendants here did not lie to the FBI, they entered the Capitol soon after the initial breach and chose to remain inside despite the surrounding chaos. Judge Chutkin imposed a sentence of 14 days' incarceration.

Finally, in *United States v. Van Keudell*, 23-CR-221-CRC, the defendant entered the building through the Senate Wing Door shortly after the initial breach there and remained inside the building for over 10 minutes.  Judge Cooper sentenced the defendant to 24 months' probation and 100 hours of community service following a guilty plea to 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G).

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed pursuant to the plea agreements in the case, as permitted under 18 U.S.C. § 3663(a)(3), that the defendants must each pay $500 in restitution, which reflects in part the roles the defendants played in the riot on January 6.[4]  Steven Hanna Plea Agreement ¶ 10; Robert Hanna Plea Agreement ¶ 10.  The defendants' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* Steven Hanna PSR ¶ 83; Robert Hanna PSR ¶ 94.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence each defendant to 14 days of incarceration, 24 months of probation, and $500 in restitution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Courtney A. Howard*
      COURTNEY A. HOWARD
      Trial Attorney, Criminal Division
      Detailed to the U.S. Attorney's Office
      601 D Street NW
      Washington, D.C. 20001
      NY Bar No. 4513909
      202-514-3130
      Courtney.Howard2@usdoj.gov

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).